UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
:
DANIEL M. VAN PELT,               :    Civ. No. 11-6810 (JAP)
:
    Petitioner         :
  v.                              :
:    **OPINION**
UNITED STATES OF AMERICA          :
:
    Respondent.         :
_____:

PISANO, District Judge.

    On May 29, 2010, petitioner Daniel Van Pelt ("Petitioner") was convicted of one count of attempting to extort money under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951, and one count of bribery, in violation of 18 U.S.C. § 666(a)(1)(B). On November 19, 2010, the Court sentenced Petitioner to 41 months' imprisonment on each count, to run concurrently. Presently before the Court is *pro se* Petitioner's motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons below, Petitioner's motion is denied.

I. BACKGROUND

    Petitioner was formerly a New Jersey State Assemblyman, a Waretown, New Jersey Township Committeeman, and the Business Administrator for Lumberton, New Jersey. The evidence at trial showed that while holding these positions in February 2009, Petitioner accepted a $10,000 payment from Solomon Dwek, a man Petitioner believed to be a developer named David Esenbach, but who was in fact a cooperating witness acting under the direction and supervision of the government, and promised to help the fictitious developer with obtaining certain development permits. Trial Ex. ("Ex.") 103.

The first meeting between Petitioner and Dwek took place on December 4, 2008. Dwek expressed an interest at that time in developing real estate in Waretown, New Jersey. Ex. 100 and Ex. 100T. Petitioner advised Dwek that because of Waretown's coastal location, such projects generally require approval from the New Jersey Department of Environmental Protection. *Id.*

At a subsequent meeting between Petitioner and Dwek on January 15, 2009, Dwek intimated to Petitioner that Dwek was willing to pay Petitioner for help in obtaining approvals to develop in Waretown. Ex. 101 and Ex. 101T ("…if I need to help, you know, you do the right thing by me, I'm a generous guy…"). However, Petitioner advised Dwek he would be leaving his position as a Committeeman in Waretown shortly. *Id.*

Petitioner and Dwek met again on February 11, 2009. At that meeting, Dwek and Petitioner discussed potential development of property within Waretown's Town Center. Ex. 102 and Ex. 102T. During that meeting, Petitioner stated such development would require a Coastal Area Facilities Review Act ("CAFRA") permit from New Jersey's DEP. *Id.* Dwek confirmed that Petitioner was remaining an Assemblyman and asked whether Petitioner would be able to help Dwek "if [Dwek] needed some stuff." *Id.* Petitioner confirmed that he could. *Id.* Ultimately, Dwek offered Petitioner "ten thousand to start," and a week and a half later Petitioner accepted an envelope containing $10,000 from Dwek at a restaurant in Atlantic City.

Dwek and Petitioner met a number of times thereafter. During one meeting, Petitioner discussed how he would expedite Dwek's application for CAFRA approvals by making some phone calls and asking that the application be moved "to the top of the pile" and then going to "sit down and physically meet with them." Ex. 105 and 105T. At another meeting Dwek offered to bribe other Waretown officials. Petitioner responded, telling Dwek "I'm all you need" and

2

suggesting that Dwek hold a fundraiser for Petitioner when Petitioner undertook a planned campaign for a seat with the United States House of Representative.

On July 21, 2009, the government filed a complaint against Petitioner alleging extortion under color of official right in violation of 18 U.S.C. § 1951(a) and (2).  Crim. No. 09-912, D.I. 1.  On December 10, 2009, a two-count indictment similarly charged Petitioner with violation of 18 U.S.C. § 1951(a) and (2), and also charged that Petitioner accepted and agreed to accept payments intending to be influenced and rewarded, in violation 18 U.S.C. 666(a)(1)(b).  On May 19, 2010, Petitioner was convicted on both counts after an eight day trial.  He was sentenced on November 19, 2010, to 41 months imprisonment on each count, to be served concurrently.

Petitioner brings the instant motion alleging that he failed to receive effective assistance at trial and sentencing.  He alleges that his counsel: (1) failed to investigate certain witnesses; (2) failed to "call, secure or subpoena no less than seventeen witnesses; (3) failed to object to the jury instructions as to Count Two; (4) failed "to object during any portion of the trial"; and (5) failed to move for a downward departure based upon various factors.

II.  ANALYSIS

1.  *Standard of Review*

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence.  28 U.S.C. § 2255; *Morelli v. United States*, 285 F.Supp.2d 454, 458 (D.N.J. 2003).  Pursuant to § 2255, a prisoner shall be released from custody if the sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." *Morelli*, 285 F.Supp.2d at 458 (citing 28 U.S.C. § 2255). To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a

fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedures. *See*, *e.g*., *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989); *Morelli*, 285 F.Supp.2d at 459 (citations omitted).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove two elements pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that counsel's performance was deficient such that it "fell below an objective standard of reasonableness." *Id.* at 687–89. Judicial scrutiny of counsel's performance is "highly deferential" and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, the petitioner must show that the deficient performance of counsel prejudiced the defense. *Id.* at 688. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687; *see also Frey v. Fulcomer*, 974 F.3d 348, 358 (3d Cir. 1992). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

2. *Whether Counsel Was Ineffective Because Counsel Failed To Investigate Witnesses*

Petitioner alleges that trial counsel was ineffective because counsel failed to investigate certain witnesses, specifically, New Jersey's DEP Commissioner Lisa Jackson, DEP Deputy Commissioner Adam Sellner, DEP employee Richard Brown, New Jersey Planning Commissioner John Ekelson, New Jersey Office of Smart Growth Executive Director Eileen Swann, and Waretown (Township of Ocean) officials James Oris and David Roberts. According

to Petitioner, all of these individuals attended a meeting on or about July 17, 2007, which centered on the issuance of a CAFRA permit to the Township of Ocean. At that meeting, then-Commissioner Jackson allegedly stated that "[o]ne of the benefits of Plan Endorsement is that any application submitted by the Township of Ocean, including CAFRA, would be 'moved to the top of the pile once it was received.'" Pet. Br. at 5.

One of the principal defenses presented by Petitioner at trial was that Dwek did not need Petitioner's influence or official assistance with CAFRA approvals because Waretown's achievement of center designation for the Town Center project allegedly meant that all such approvals would be streamlined. Petitioner claims that, in furtherance of this defense, the above-named witnesses would have been able to "contradict" the testimony of the government's witness, Thomas Micai, the DEP's Director of Land Use and Environmental Protection, who testified about, among other things, the CAFRA permitting process and the length of time it takes to process a permit application. Tr. 136-40. Micai testified that the process could take months to years, and that he is sometimes contacted by public officials seeking to move the process for a particular application along at a quicker pace. Tr. 139. Petitioner claim that these potential witnesses would have testified that "it was the New Jersey Office of Smart Growth who was responsible for obtaining the CAFRA [permit] for the municipality and that Mr. Micai was not part of the Plan Endorsement process," and that the relevant permits "were to be streamlined and therefore the 'influence' of Mr. Van Pelt was not required." Pet. Br. at 5-6.

Even if these witnesses would have testified as Petitioner contends,[1] the Court finds that Petitioner has not established either prong of the *Strickland* analysis. First, the Court does not find that necessarily counsel acted unreasonably in failing to investigate and introduce evidence

---

[1] The Court notes that the showing required under *Strickland* may not be based on "mere speculation about what the witnesses …might have said." *U.S. v. Gray*, 878 F.2d 702, 712 (1989).

5

that would have been cumulative of other evidence.  The issue of the "streamlining" of CAFRA permits for Waretown was explored during the cross examination of Micai and during the testimony (direct, cross and redirect) of Petitioner.  *See*, *e.g.*, Tr. 146-47, 607, 605.

Second, Petitioner has not established "a reasonable probability--one sufficient to undermine [the Court's] confidence in the outcome -- that the jury's verdict would have been different" if not for the alleged failure by counsel.  *See Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.  Evidence regarding statements made by New Jersey officials at the 2007 meeting regarding the benefits of center designation would have been of little relevance to the issues in this case.  Furthermore, as the government points out, it was largely unchallenged at trial that the Petitioner believed that Waretown's achievement of center designation would result in CAFRA permits being easier to obtain.  Indeed, additional evidence in this regard would have done nothing to diminish the strength of the evidence showing Petitioner offered to help Dwek obtain permits from the DEP in exchange for money.  *See*, *e.g.*, Ex. 106 and 106T (Petitioner tells Dwek that he can get applications expedited and "move[d ] … to the top of the pile" by making phone calls and meeting with officials.).

3.  *Whether Counsel Was Ineffective Because Counsel Failed to "call, secure or subpoena no less than seventeen witnesses"*

Petitioner's next ground for relief is his allegation that defense counsel failed to "call, secure or subpoena no less than seventeen witnesses" that Petitioner claims "would have been able to educate the jury on the benefits of Plan Endorsement," thereby supporting Petitioner's defense that his " 'official influence' was never needed in order to secure a CAFRA permit" for Dwek.  Pet. Br. at 6.  Petitioner also claims that defense counsel erred in failing to call four proposed expert witnesses.

First, as to the "seventeen witnesses," Petitioner does not name even one of the seventeen nor does he provide any details regarding the testimony any of them would have provided. Rather, Petitioner's allegations are nonspecific and conclusory. Consequently, the Court finds that Petitioner has failed to establish grounds for relief. *See U.S. v. Thomas*, 221 F.3d 430, 437-38 (2000) (affirming denial of relief when petitioner "failed to set forth facts supporting the grounds alleged" and where allegations were "quite conclusory and too vague to warrant further investigation.")

Second, as to the expert witnesses, Petitioner also fails to explain why it was error on the part of defense counsel rather than mere trial strategy not to call the proposed expert witnesses at trial. In a hearing prior to trial, the Court ruled that none of the proposed experts would be permitted to testify about the law and what the law does and does not allow, *see* April 29, 2010 Hearing Transcript at 59, and the Court subsequently granted a motion *in limine* by the government to preclude one of the witnesses, Professor Leubsdorf, who was offered as an expert in the application of New Jersey statutes and codes governing the behavior of public officials, *see* Tr. 5, 9-10. Given these facts as well as the lack of substance in Petitioner's allegations in his petition, the Court finds that Petitioner has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

4. *Whether Counsel Was Ineffective Because Counsel Allegedly Failed To Challenge Jury Instructions*

Petitioner contends that counsel erred in failing to object at trial to the jury instructions regarding Count Two, which charged Petitioner with violating 18 U.S.C. § 666, on the grounds that the instructions did not require the jury to find a *quid pro quo*. On direct appeal, however,

the Third Circuit found that, assuming that the statute required a *quid pro quo*, the charge given by the Court to the jury " adequately convey[ed] the necessity of a link between the thing accepted by Van Pelt and the government business sought to be influenced, and in more ways than one." *U.S. v. Van Pelt*, 448 Fed. Appx. 301, 304 (3d Cir. 2011).  There being no error in the Court's instructions, there can be no finding that counsel acted unreasonably in failing to object to them.

5.  *Whether Counsel Was Ineffective For Allegedly Failing to Object at Trial*

With respect to his next ground for relief, Petitioner first alleges that trial counsel was ineffective because counsel "did NOT object at all during the entire trial." Pet. Br. at 7 (capitalization in original).  However, the record reflects trial counsel made numerous objections throughout the trial.  *See*, *e.g.*, Tr. 73, 84, 85, 86, 87, 103, 178, 228.  Some of defense counsel's objections were sustained by the Court, others were overruled.  Plaintiff's allegation that his counsel failed to make *any* objections during trial is clearly contradicted by the record and, thus, is without merit.

Petitioner also argues more specifically that defense counsel "failed to object to the testimony given by Mr. Thomas Micai from the New Jersey Department of Community Affairs." Pet. Br. at 7.  According to Petitioner, counsel should have objected because Micai's testimony "that he was responsible for issuing the CAFRA permit required by the fictitious developer" was allegedly "blatantly false." *Id.*  However, an objection on such a basis would have been inappropriate; the proper manner for defense to impeach a witness is by cross-examination. Defense counsel exercised the opportunity to cross examine Micai in this case.

8

In sum, Petitioner's allegations that defense counsel failed to object at all at trial and, more specifically, failed to object to Micai's testimony do not support granting Petitioner relief in this case.

6. *Whether Counsel Was Ineffective At Sentencing Hearing*

Petitioner raises three grounds in support of his contention that counsel was ineffective at his sentencing hearing. Petitioner alleges: counsel erred by (1) failing to move for a downward departure pursuant to United States Sentencing Guidelines § 5H1.4[2] based on the alleged existence of an "extraordinary physical impairment;" (2) failing to suggest that the Court consider the fact that Petitioner resigned from his positions with the Ocean Township Committee and the New Jersey Assembly and repaid the $10,000 he accepted from Dwek; and (3) failing to bring to the Court's attention Petitioner's "civic groups deeds and volunteerism."

Petitioner suffers from a kidney condition; approximately ten years before his sentencing he received a kidney transplant. Detailing the nature of Petitioner's medical condition and citing 18 U.S.C. § 3553(a)(2)(D),[3] counsel argued to the Court for a "downward departure." *See* November 16, 2010 Sentencing Memorandum at 11-12, 15-21. Although counsel may not have expressly moved under the sentencing guidelines for a downward departure, the Court considered the guidelines, and § 5H1.4 in particular, regardless. At the sentencing hearing, the Court stated as follows:

---

[2] As relevant here, Section 5H1.4 of the United States Sentencing Guidelines provides:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

[3] Pursuant to § 3553, "[t]he court, in determining the particular sentence to be imposed, shall consider … the need for the sentence imposed … to provide the defendant with needed … medical care … in the most effective manner."

9

> Now, the question becomes, because you characterized it as a downward departure application in your memo, whether or not there's anything in the guidelines that would justify this. And the problem is that there are some specific guidelines provisions which discuss all of these concepts.
>
> ∗∗∗
>
> "5H1.4, physical condition including drug or alcohol dependence. Physical condition, including physique is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward. For example, in the case of a seriously infirm defendant, home detention may be as efficient and less costly as imprisonment." I don't find that guidelines provision to apply here. Although, Mr. Van Pelt clearly suffers from kidney disease and will require medical care and treatment, he is not so seriously infirm that I can conclude that home detention may be as efficient and less costly than imprisonment under the facts of the case. I do not find that the standards for applying this particular section apply.

November 19, 2010 Sentencing Hearing Transcript at 42-44. Thus, as can be seen from the Court's application of 5H1.4 at sentencing, Petitioner cannot show the results of the proceedings would have been different had counsel expressly moved for a downward departure under U.S.S.G. 5H1.4. *See Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. The issue was addressed and the rejected by the Court.

Petitioner also contends that counsel erred by not asking the Court to consider that Petitioner accepted responsibility for his actions by resigning his public positions and repaying the money Petitioner accepted from Dwek. However, counsel raised these points in the sentencing memorandum. *See* Sentencing Memorandum at 14-15.

Finally, Petitioner claims counsel erred by failing to bring to the Court's attention Petitioner's "civic groups deeds and volunteerism" that he engaged in while in office. Pet. Br. at 11. He specifically references a non-profit organization he founded over a decade ago whose purpose was to write and seek grants from government agencies in order to improve educational opportunities for citizens of Waretown. As the government points out, however, counsel discussed at length Petitioner's dedication to public service and his commitment to the

community.  Moreover, Petitioner does not explain on what basis a motion for a downward departure should have been made and why it would have been likely to have been successful.

## III.  CONCLUSION

For the reasons above, Petitioner's motion is denied.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, no Certificate of Appealability will issue pursuant to 28 U.S.C. § 2253(c).

      /s/ JOEL A. PISANO
United States District Judge

Dated:  February 13, 2013